UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GABRIEL ECKARD,

                Plaintiff,

v.

JEA LEE,

                Defendant.

Case No. C19-429-RAJ-MLP

REPORT AND RECOMMENDATION

## I.    INTRODUCTION AND SUMMARY CONCLUSION

This is a 42 U.S.C. § 1983 prisoner civil rights action. Plaintiff Gabriel Eckard is a pretrial detainee at the Snohomish County Jail (the "Jail") in Everett, Washington. The Court previously recommended to the Honorable Richard A. Jones that Plaintiff's motion for summary judgment (dkt. # 11) be denied.[1] Currently before the Court is Defendant's motion for summary judgment alleging that Defendant Sgt. Jea Lee did not use excessive force by placing Plaintiff in a restraint chair after Plaintiff repeatedly pushed the emergency call button in his cell despite the fact there was no emergency. (Dkt. # 24 ("Mot. Summ. J.") at 1.) In response, Plaintiff filed an objection asserting that he would not submit a substantive response to Defendant's motion for

---

[1] Judge Jones has not yet ruled on that Report and Recommendation (dkt. # 22 ("Report and Recommendation")).

REPORT AND RECOMMENDATION - 1

summary judgment because the district judge has not yet ruled on the undersigned's Report and Recommendation regarding Plaintiff's motion for summary judgment. (Dkt. # 26.) Plaintiff also requested that the Court strike Defendant's motion for summary judgment. (*Id*.) The Court found Plaintiff's argument unpersuasive and ordered Plaintiff to respond to Defendant's motion for summary judgment. (Dkt. # 29.) Plaintiff submitted a second motion to strike Defendant's motion for summary judgment (dkt. # 30 ("Motion to Strike")) and a declaration (dkt. # 31 ("Second Eckard Decl.")). In his motion, Plaintiff reasserts arguments from his motion for summary judgment and alleges he needs more time to conduct discovery before he responds to Defendant's motion for summary judgment. (Dkt. # 30 at 2-3.)

As a threshold matter, the Court recommends that Plaintiff's second motion to strike Defendant's motion for summary judgment be denied. The discovery deadline in this matter was September 30, 2019. (Dkt. # 10 ("Scheduling Order").) Plaintiff did not move for an extension of the discovery deadline and instead filed his motion for summary judgment on June 5, 2019, before the discovery deadline. Plaintiff has not presented any reason why he could not have conducted discovery during the appropriate time period. The Court notes that the claims in this matter arise out of the same events that are the focus of another case filed by Plaintiff. *See Eckard v. Stites*, C19-738-RSM-MLP. In that matter, Plaintiff also filed a motion for summary judgment before the discovery deadline. (*Id.* at Dkt. # 14.) There is currently a pending Report and Recommendation to deny his motion for summary judgment in that matter. (*Id.* at Dkt. # 24; Dkt. # 22.) Because Plaintiff had ample time to conduct discovery, striking Defendant's motion for summary judgment is not warranted.[2]

---

[2] The Court also notes Plaintiff is familiar with both discovery and motions practice in this district as he has filed over thirty 42 U.S.C. ¶ 1983 actions since 2018 and has become a three-strike litigant pursuant to 28 U.S.C. ¶ 1915(g). *See, e.g., Eckard v. Stringham, et al.,* C18-898-RAJ; *Eckard v. Woods, et al.,*

REPORT AND RECOMMENDATION - 2

1   Having considered the parties' submissions, the governing law, and the balance of the
2   record, the Court recommends Defendant's motion for summary judgment (dkt. # 24) be
3   GRANTED and Plaintiff's second motion to strike Defendant's motion for summary judgment
4   (dkt. # 30) be DENIED.

## II.   BACKGROUND

Defendant relies on the evidence submitted in opposition to Plaintiff's motion for summary judgment, including the surveillance footage of the Plaintiff in the restraint chair and Defendant's June 14, 2019 declaration. (Dkt. # 12 (12/30/2018 Video of Transfer); Dkt. # 14 ("Lee Decl.").) Accordingly, the following statement of facts is the same as that set forth in the undersigned's August 14, 2019 Report and Recommendation:

Plaintiff alleges that on December 30, 2018, while he was housed in the disciplinary segregation unit, he pushed the emergency call button in his cell despite the fact that there was no emergency. (Dkt. # 3 at 2 ("Compl."); Dkt. # 16 ("Eckard Decl.") at ¶ 1.) Plaintiff later asserts in his reply brief and accompanying declaration that he was repeatedly pressing the emergency call button because a mixture of urine, feces, and detergent had been pushed under his cell door by a cleaning crew working in the common area outside his cell. (Eckard Decl. at ¶ 8.) Plaintiff alleges that when he told Defendant about the unsanitary condition of his cell, Defendant declined to address the problem, prompting Plaintiff to begin pressing the button. (*Id*.) Plaintiff claims that he was never warned not to press the call button in the absence of an emergency. (*Id*.)[3]

---

C18-964-JCC; *Eckard v. Deshev, et al.*, C18-1053-JCC; *Eckard v. Walters, et al.*, C18-1258-RSM-JPD; *Eckard v. Wilmoth*, C18-1259-RAJ; *Eckard v. Caraway, et al.*, C18-1260-TSZ; *Eckard v. Mitchell et al.*, C18-1810-RSM.

[3] The Court notes that this representation by Plaintiff is dubious at best, given that a prior case filed in this district involves Plaintiff being confined to a restraint chair after repeatedly pressing the emergency call

Shortly thereafter, Defendant entered the module with other deputies, a can of oleoresin capsicum vapor spray, and a restraint chair, and warned Plaintiff that he would be sprayed if he did not submit to handcuffing and removal from his cell.[4] (*Id.*) Plaintiff asserts that he submitted to handcuffing, was removed from his cell, and placed into a restraint chair. (*Id.* at 3.) Once he was secured into the restraint chair, Plaintiff was moved to the observation unit and placed into an observation cell for several hours. (*Id.*)

Plaintiff alleges that Defendant used excessive force by ordering him to be placed in the restraint chair without adequate justification, because Plaintiff was not attempting suicide or committing any acts of self-harm. He seeks declaratory relief, one million dollars in compensatory damages, and one million dollars in punitive damages.[5] (*Id.* at 5.)

Defendant's account of the circumstances leading up to Plaintiff's confinement in the restraint chair, as well as the reasons for that confinement, differs from Plaintiff's account. Defendant asserts that in the afternoon of December 30, 2018, Plaintiff intentionally fouled his cell with his own urine and feces, and then forced his bodily waste into the common area through the cuff port and urinated under his cell door. (Dkt. # 20 ("Kenyon Decl.") at ¶ 3.) Jail staff attempted to clean up the area, while Plaintiff continually called module workers "bitches" and told them they were "cleaning up his shit for free." (*Id.* at ¶ 4.) Approximately three hours later, Plaintiff once again forced a mixture of feces and urine under his door, at which time a deputy placed a blanket at the bottom of his door to attempt to block Plaintiff from forcing any more

---

button in the segregation unit on December 3, 2018, less than a month before the events at issue in this case. *See Eckard v. Thomas, et al.*, Case No. 2:19-cv-104-RSM-BAT (Dkt. # 5 at 2-3).

[4] In the prior case, Case No. 2:19-cv-104-RSM-BAT, it appears that Plaintiff resisted handcuffing and was consequently sprayed with the oleoresin capsicum vapor.

[5] Plaintiff alleges that he properly exhausted his administrative remedies by filing grievances related to the incident, and Defendant does not argue otherwise.

REPORT AND RECOMMENDATION - 4

bodily waste into the common area. (*Id.* at ¶ 5.) Plaintiff called the liquid his "cleaning solution," and stated multiple times that the next time a deputy opened his cuff port, he would urinate on them. (*Id.*; *see also* Dkt. # 21, Ex. A (Incident Report).)

Defendant asserts that approximately thirty minutes after the second incident involving Plaintiff forcing his bodily waste under the door, he responded to Plaintiff's cell with a nurse after Plaintiff pressed his emergency call button and complained of medical issues. (Lee Decl. at ¶ 2.) However, the nurse found no evidence of medical issues or other health concerns. (*Id.* at ¶ 3.) The incident report reflects that Plaintiff had initially complained of chest pains, but then declined to answer the nurse's questions and instead directed racist remarks and threats to kill at the Defendant throughout the interaction. (Dkt. # 20, Ex. A.)

Later that evening, Defendant received a call from a deputy on duty in the Central Control Office ("CCO") that Plaintiff was repeatedly pressing his emergency call button, which sends an alert to the computer in the CCO that the deputies use to control the opening of security doors in the jail. (Lee Decl. at ¶ 4.) Defendant asserts that Plaintiff's repeated calls were accumulating in the computer queue and preventing deputies from responding to requests to open the doors until Plaintiff's alerts were resolved, thereby interfering with deputies' duties to timely control movement throughout the jail. (*Id.*) Defendant asserts that this delay also had the potential to interfere with the deputies' ability to rapidly respond in case of a medical or security emergency, although there was no such emergency on this occasion. (*Id.*) As a result, Defendant asserts that he removed Plaintiff from his cell and placed him in a restraint chair for a limited time. (*Id.* at ¶ 5.)

Defendant asserts that his purpose in removing Plaintiff from his cell and placing him in the restraint chair was to restore the security and orderly operation of the jail by preventing

REPORT AND RECOMMENDATION - 5

1  Plaintiff from continuing to disrupt jail operations, and not to punish Plaintiff. (*Id.* at ¶¶ 5, 7.)
2  Because Plaintiff would be unable to press the emergency call button while he was in the
3  restraint chair, Defendant moved Plaintiff to the observation unit where he could be monitored in
4  case of an emergency. (*Id.*) Due to security concerns related to Plaintiff's behavioral history,
5  Defendant assembled a team of deputies to assist with the transfer, as well as make a cellphone
6  video recording of the transfer to the observation unit. (*Id.* at ¶ 6, Ex. A (12/30/19 Incident
7  Report); Dkt. # 12 (disks of Jail Surveillance Footage from the 12/30/18 transport).)

### III.  DISCUSSION

#### A.  Summary Judgment Standard

Summary judgment is appropriate when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case, or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden of persuasion at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party. *Id.* at 585-87.

The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient[]" to defeat summary judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Nor can the nonmoving party "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

### B. Section 1983 Standard

In order to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show (i) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981) (citing *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)). A defendant cannot be held liable under § 1983 solely on the basis of the individual's supervisory responsibility or position. *Monell v. Dept. of Social Servs. of City of New York*, 436 U.S. 658, 691-94 (1978).

### C. Excessive Force Claim

Plaintiff's challenge to the conditions of his confinement as a pretrial detainee raises the issue of his right to be free from punishment. *See Bell v. Wolfish*, 441 U.S. 520, 533 (1979). The Supreme Court has held that a pretrial detainee "may not be punished prior to an adjudication of guilt in accordance with due process of law." *Id.* at 535. Thus, when evaluating the

constitutionality of conditions of pretrial confinement, the proper inquiry is whether those conditions amount to punishment of the detainee. *Id*. While the Due Process Clause protects pretrial detainees from punishment, not every disability imposed during pretrial detention constitutes "punishment" in the constitutional sense. *Id*. at 537. Thus, the test to be applied in determining whether particular restrictions and conditions imposed as a result of pretrial detention amount to punishment in the constitutional sense is whether there was an express intent to punish, or "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]. *Id*. at 538 (quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-169 (1963)).

The Supreme Court has recognized that "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Id*. at 546. The Supreme Court has further recognized that prison administrators "should be accorded wide ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id*. at 547.

Plaintiff's complaint fails to show that Defendant placed him in a restraining chair with the intent to punish him. Defendant submitted a declaration stating that he put Plaintiff in a restraint chair to prevent him from pressing his emergency call button in the absence of an emergency, which was disrupting jail operations. (Lee Decl. at ¶¶ 2-5.) Defendant explained that pressing the call button sends an alert to the CCO that deputies use to control the opening of security doors in the Jail. (*Id*. at ¶ 4.) Plaintiff's repeated calls were accumulating in the

computer que and preventing the deputies from responding to requests to open doors until Plaintiff's alerts were resolved. (*Id.*) Plaintiff therefore was interfering with the deputies' duties to timely control movement throughout the Jail and with response times to potential medical or security emergencies. (*Id.*) To prevent Plaintiff from continuing to press the emergency call button, Defendant elected to put Plaintiff in a restraint chair for a limited time. (*Id.* at ¶ 5.) The evidence in the record supports the conclusion that Defendant's decision to place Plaintiff in a restraint chair was not intended to punish him and that it was reasonably related to legitimate government objectives, *i.e.*, maintaining institutional security and preserving internal order and discipline.

Plaintiff asserts that misusing the emergency call system does not interfere with the Jail staff's ability to monitor inmates and that it "cannot cause any problems whatsoever." (Second Eckard Decl. at ¶ 2.) The Court finds Plaintiff's argument unpersuasive. As discussed above, the Jail's staff is given great deference in the execution of their duties to preserve internal order and discipline and to maintain institutional security. Defendant has submitted evidence that Plaintiff's repeated misuse of the emergency call button was interfering with the management of the institution. Plaintiff has not provided any evidence, apart from his own conclusory assertions that use of the restraint chair was unnecessary, that the amount of force used by Defendant was not rationally related to a legitimate penological interest or out of proportion to the disruption Plaintiff was causing jail operations.

As noted in the previous Report and Recommendation, Plaintiff concedes that he was not injured by Defendant's conduct, apart from some discomfort from the restraints and emotional distress. (Report and Recommendation at 10.) Unlike when Plaintiff was placed in the restraint chair earlier that same month for continually pushing the emergency call button (after refusing to

REPORT AND RECOMMENDATION - 9

submit to handcuffing and being sprayed with oleoresin capsicum vapor to obtain compliance),[6] Plaintiff does not claim that pepper spray or any serious force was used to obtain Plaintiff's compliance with the cell transfer. (*Id.*) Defendant also tempered the use of force by waiting until Plaintiff's behavior in pushing the emergency call button escalated before removing Plaintiff from his cell. *See Id.; Kingsley*, 135 S.Ct. at 2473.[7]

Further, the video submitted by Defendant of the parties' interactions as Plaintiff is wheeled in the restraint chair to the observation unit cell shows Plaintiff swearing, calling a woman a "bitch," and threatening the jail staff through a spit mask. (Dkt. # 12 (12/30/18 video of transfer).) It does not show any rough or inappropriate treatment by the deputies and jail staff executing the transfer, and instead shows them acting calmly. (*Id.*) This evidence supports Defendant's assertion that he temporarily placed Plaintiff in the restraint chair because he was disrupting jail operations.

Because Plaintiff was reasonably restrained to maintain order and security, and not as punishment, the Court finds Plaintiff's constitutional rights were not violated. Accordingly, the Court recommends that Defendant's motion for summary judgment be granted.

**D.    Qualified Immunity**

Defendant also argues he is entitled to qualified immunity. (Mot. Summ. J. at 6-7.) "[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

---

[6] *See Eckard v. Thomas, et al.*, Case No. 2:19-cv-104-RSM-BAT (Dkt. # 5).

[7] In addition to evidence that Plaintiff's repeated pushing of the call button was interfering with the safe and orderly operation of the jail, Defendant provided evidence that earlier in the evening Plaintiff had smeared a large amount of feces on the outside or his cell door and urinated under the cell into the common area twice. (Kenyon Decl. at ¶¶ 3-5.) Thus, by the time Plaintiff began pressing the emergency call button repeatedly, Plaintiff had already been causing repeated disturbances to the jail operations all afternoon.

reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson,* 555 U.S. 223 (2009). As the Court has found that Defendant did not violate Plaintiff's constitutional rights, it is not necessary to address qualified immunity.

## IV.   CONCLUSION

The Court recommends Defendant's motion for summary judgment (dkt. # 24) be GRANTED and Plaintiff's second motion to strike Defendant's motion for summary judgment (dkt. # 30) be DENIED. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **January 24, 2020**.

The Clerk is directed to send copies of this Report and Recommendation to the parties and to the Honorable Richard A. Jones.

Dated this 27th day of December, 2019.

*[signature]*

MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION - 11